UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| RAMONA L. DAVIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:19-CV-082-HBG |
| ) | |
| ANDREW M. SAUL,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 14].

Now before the Court is Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 15 & 16] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 17 & 18]. Ramona L. Davis ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Andrew M. Saul ("the Commissioner"). For the reasons that follow, the Court will **GRANT IN PART** Plaintiff's motion and **DENY** the Commissioner's motion.

### I.  PROCEDURAL HISTORY

On August 4, 2016, Plaintiff protectively filed an application for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, claiming a period of disability that began on July 1, 2015. [Tr. 11, 163–65]. After her application was denied

---

[1] Andrew M. Saul was sworn in as the Commissioner of Social Security on June 17, 2019, during the pendency of this case. Therefore, pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul is substituted as the Defendant in this case.

initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 107–08]. A hearing was held on April 11, 2018. [Tr. 24–49]. On August 22, 2018, the ALJ found that Plaintiff was not disabled. [Tr. 11–19]. The Appeals Council denied Plaintiff's request for review on February 8, 2019 [Tr. 1–7], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on March 8, 2019, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II. ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2020.
>
> 2. The claimant has not engaged in substantial gainful activity since July 1, 2015, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The claimant has the following severe impairments: carpal tunnel syndrome; osteoarthritis; ankylosing spondylitis; inflammatory arthritis/Rheumatoid arthritis (RA); osteopenia; hyperlipidemia; dysfunction of major joints; and vascular insult to the brain (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a). The claimant can lift and carry, push and pull 10 pounds occasionally and less than 10 pounds frequently. With normal breaks in an eight-hour day, she can sit for six hours, and stand and or walk for two hours; can never climb ladders, ropes, and scaffolds; can occasionally climb ramps and stars; can frequently balance, stoop,

kneel, crouch, and crawl; can tolerate frequent handling and fingering.

6. The claimant is capable of performing past relevant work as a receptionist. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from July 1, 2015, through the date of this decision (20 CFR 404.1520(f)).

[Tr. 13–18].

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762,

773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV. DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4

> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4) and -(e), 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V. ANALYSIS

Plaintiff asserts that the ALJ's disability decision is not supported by substantial evidence in several regards. First, Plaintiff maintains that the ALJ erred in failing to address in any detail her neuropathy or fibromyalgia at Step Two of the sequential evaluation process and consequently did not consider these impairments and resulting limitations in the RFC determination. Next, Plaintiff asserts that the ALJ improperly weighed the opinion of her treating physician Kristie Young, D.O. Plaintiff also claims that the ALJ erred by affording great weight to the opinion of consultative examiner Dr. Eva Misra, as Dr. Misra's opinion is similar to Dr. Young's opinion except that it is silent as to the use of Plaintiff's hands. Lastly, Plaintiff claims that the ALJ erred

5

in his evaluation of her non-exertional limitations and symptoms such as her fatigue and pain. The Court will address Plaintiff's specific allegations of error in turn.

### A. ALJ's Assessment of Plaintiff's Fibromyalgia

Plaintiff asserts that the ALJ erred by failing to "discuss why he did not find [her] diagnosed neuropathy or fibromyalgia a severe impairment, nor did he even mention those conditions in the decision." [Doc. 16 at 12]. Moreover, Plaintiff contends that the ALJ improperly failed to consider her symptoms such as pain, fatigue, or stiffness that are a result of these impairments or evaluate the effect of fatigue and pain in her hands as a result of neuropathy or fibromyalgia versus her rheumatoid arthritis. Plaintiff points to treatment notes by her rheumatologist noting neuropathy and fibromyalgia [Tr. 290, 305], as well as claims that Dr. Young's records reflect those diagnoses as well.

The Commissioner responds that the ALJ recognized that Plaintiff had been diagnosed with fibromyalgia and possibly neuropathy in the disability decision, but considered evidence of Plaintiff's pain, tenderness, stiffness, and fatigue in formulating the RFC. [Doc. 18 at 11].

Plaintiff correctly states that the ALJ did not list her fibromyalgia and neuropathy as severe impairments, as well as that he did not address why he did not find these medical conditions to be severe impairments. [Tr. 13]. In the RFC determination, the ALJ noted that Plaintiff alleged an inability to work due to several conditions, including fibromyalgia and neuropathy [Tr. 14], as well as reviewed Dr. Misra's consultative examination that "[t]here may be some mild evidence of fibromyalgia and questionable neuropathy with no clear sign as she felt the tuning fork" [Tr. 17].

To be found disabled, "the ALJ must find that the claimant has a severe impairment or impairments" at step two. *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88 (6th Cir. 1985). Plaintiff bears the burden at step two of proving the existence of a severe, medically

6

determinable impairment. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). An impairment, or combination of impairments, will be found severe if the impairment(s) "significantly limit[] [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). The step two determination is "a *de minimis* hurdle," in that "an impairment will be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs v. Brown*, 880 F.2d 860, 862 (6th Cir. 1988) (citing *Farris*, 773 F.2d at 90). Importantly, the diagnosis of an impairment "says nothing about the severity of the condition." *Id.* at 863. Rather, the claimant must "produce or point to *some* evidence that indicates that an alleged impairment impacts his ability to perform basic work activities." *Johnson v. Astrue*, No. 3:09-CV-317, 2010 WL 2803579, at *5 (E.D. Tenn. June 30, 2010), *report and recommendation adopted by*, 2010 WL 2836137 (E.D. Tenn. July 15, 2010).

The Sixth Circuit has recognized that fibromyalgia may be a "severe impairment." *See, e.g.*, *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 818 (6th Cir. 1998). Social Security Ruling 12-2p "provides guidance on how [the Social Security Administration] develop[s] evidence to establish that a person has a medically determinable impairment of fibromyalgia, and how [to] evaluate fibromyalgia in disability claims and continuing disability reviews under titles II and XVI of the Social Security Act." SSR 12-2p, 2012 WL 3104869, at *2 (July 25, 2012). The applicable ruling defines fibromyalgia as "a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." *Id.* Social Security Ruling 12-2p does not establish new law, but "merely provides guidance on how to apply pre-existing rules when faced with a claimant asserting disability based on fibromyalgia." *Luukkonen v. Comm'r of Soc. Sec.*, 653 F. App'x 393, 399 (6th Cir. 2016). "Under SSR 12-2P, the ALJ cannot rely on a physician's diagnosis alone; rather, the

7

evidence must document that the physician reviewed the person's medical history and conducted a physical exam." *Herzog v. Comm'r of Soc. Sec.*, No. 2:16-CV-244, 2017 WL 4296310, at *2 (S.D. Ohio Sept. 28, 2017).

Sections I and II detail the process of evaluating fibromyalgia, with Section I stating that fibromyalgia can be established by providing evidence from an acceptable medical source, i.e. a licensed physician. SSR 12-2p, 2012 WL 3104869, at *2 (July 25, 2012). The medical evidence must document more than a diagnosis–"[t]he evidence must document that the physician reviewed the person's medical history and conducted a physical exam." Moreover, the treatment notes should be consistent with the diagnosis, reflect the status of symptoms, and establish the physician's assessment over time of strength and functional abilities. *Id.*

Next, Section II addresses the evaluation process for determining whether fibromyalgia constitutes a medically determinable impairment. *Id.* A medically determinable impairment of fibromyalgia exists "if the physician diagnosed [fibromyalgia] and provides the evidence described in section II.A or section II.B, and the physician's diagnosis is not inconsistent with the other evidence in the person's case record." *Id.*

Ultimately, the ALJ must apply one of two sets of criteria for finding that fibromyalgia is a medically determinable impairment: (1) the 1990 American College of Rheumatology ("ACR") Criteria for Classification of Fibromyalgia (SSR 12-2, § II.A); or (2) the 2010 ACR Preliminary Diagnostic Criteria (*Id.* at § II.B). *Id.* The first set of criteria, under Section II.A, requires that the claimant demonstrate: "(1) a history of widespread pain in all quadrants of the body for at least three months; (2) at least eleven positive tender points found bilaterally on the left and right sides of the body [and both above and below the waist] on physical examination; and (3) evidence that other disorders that could cause the symptoms were excluded." *Id.* at *2–3. Under the 2010

8

criteria, detailed in Section II.B, the claimant must demonstrate: "(1) a history of widespread pain; (2) repeated manifestations of six or more fibromyalgia symptoms or signs, such as fatigue, cognitive or memory problems, waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and (3) evidence that other disorders that could cause the symptoms were excluded." *Id.* at *3.

Here, the medical record presents a close call on whether Plaintiff can establish a diagnosis of fibromyalgia. First, the record does not contain extensive evidence of treatment or testing for fibromyalgia. Dr. Young noted Plaintiff's confirmed neuropathy [Tr. 339], and regularly treated Plaintiff for her inflammatory and rheumatoid arthritis, as well as ankylosing spondylitis, but the Court's review of Dr. Young's treatment records indicates that she did not assess Plaintiff's fibromyalgia. Further, the Commissioner points to a September 24, 2013 treatment note from Dr. Jesse Torbet with University Orthopedic Surgeons stating that Plaintiff reported that she "has a history of fibromyalgia, but it was a wrong diagnosis and she was later diagnosed with rheumatoid [arthritis]." [Tr. 269]. *See, e.g.*, *Perkins v. Comm'r of Soc. Sec.*, No. 1:13-CV-102, 2014 WL 619393, at *9 (S.D. Ohio Feb. 18, 2014) ("As noted by the ALJ and the non-examining state agency physician, there are no examination findings of trigger point tenderness or any other examination findings from Dr. Todd or any other medical source that support the fibromyalgia diagnosis . . . Absent such evidence, plaintiff's allegations of pain and her prescriptions for pain medication are not enough to establish that plaintiff suffers from fibromyalgia, severe or otherwise."), *report and recommendation adopted by*, 2014 WL 1872119 (S.D. Ohio May 8, 2014); *Cherry v. Astrue,* No. 3:07–cv–79, 2009 WL 1766547, at *6 (M.D. Tenn. June 18, 2009) (finding the ALJ properly determined fibromyalgia was not a severe impairment where diagnosis was largely based on plaintiff's subjective complaints).

9

Dr. Misra conducted a consultative physical examination of Plaintiff on March 9, 2017, and noted that Plaintiff was able to get up from a chair and on and off the table with mild difficulty; her grip strength as 3/5 on the left and 4/5 on the right; that she had tender trigger points in her upper extremities and lower back; and that she had a full range of motion universally, full muscle condition and strength other than grip, and she felt a tuning for sensation. [Tr. 542]. However, Dr. Misra opined that Plaintiff has longstanding rheumatoid arthritis, with no synovitis, warmth, deformity, or nodules noted, but that there "[m]ay be some mild evidence of fibromyalgia, also questionable neuropathy" as Plaintiff "felt the tuning fork." [Tr. 544].

In the disability decision, the ALJ acknowledged Plaintiff's complaints of fibromyalgia, as well as the relevant portion within Dr. Misra's opinion. However, the ALJ failed to specifically assess Plaintiff's fibromyalgia—whether by stating that he did not find it to be a severe impairment or detailing that he had considered the effects of Plaintiff's fibromyalgia in the RFC determination. "When the record presents evidence of fibromyalgia, the Sixth Circuit has not hesitated to remand or reverse administrative decisions that fail to consider, or apply incorrect standards to, the condition." *Partlow v. Comm'r of Soc. Sec.*, No. 2:11–CV–00066, 2012 WL 936341, at *8 (S.D. Ohio Mar. 20, 2012) (citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 244 (6th Cir. 2007)). "Numerous other records document Plaintiff's reports of joint pain, an ailment commonly found in those diagnosed with fibromyalgia." *See Lyman v. Comm'r of Soc. Sec.*, No. 1:16-CV-124, 2017 WL 2240509, at *3 (W.D. Mich. May 23, 2017). The ALJ's failure to discuss Plaintiff's fibromyalgia "was compounded by the ALJ's assessment of Plaintiff's activities," as the ALJ found that while Plaintiff asserted that she was unable to stand or sit for long periods due to chronic pain, this was contrasted by her other reported daily activities. *See id.*

Diagnosing fibromyalgia involves "observation of the characteristic tenderness in certain

10

focal points, recognition of hallmark symptoms, and 'systematic' elimination of other diagnoses." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 244 (6th Cir. 2007) (quoting *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 820 (6th Cir. 1988)). "[P]hysical examinations will usually yield normal results—a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions. There are no objective tests which can conclusively confirm the disease; rather it is a process of diagnosis by exclusion." *Preston*, 854 F.3d at 818.

"This makes the credibility/subjective symptom determination particularly important where a claimant has been diagnosed with fibromyalgia." *James v. Comm'r of Soc. Sec.*, No. 1:19 CV 570, 2020 WL 836493, at *6 (N.D. Ohio Feb. 20, 2020). "Opinions that focus solely upon objective evidence are not particularly relevant" due to "the unique evidentiary difficulties associated with the diagnosis and treatment of fibromyalgia." *Rogers*, 486 F.3d at 245. Cases involving fibromyalgia "place[ ] a premium . . . on the assessment of the claimant's credibility." *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 990 (N.D. Ohio 2003). This is so because "unlike medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs." *Rogers*, 486 F.3d at 243. The Court finds that by solely listing these allegedly inconsistent reported daily activities, without any overarching discussion that he was considering Plaintiff's fibromyalgia, the ALJ failed to properly evaluate Plaintiff's subjective complaints of pain.

Ultimately, the Court notes that the evidence cited by the Commissioner likely supports a finding that Plaintiff's fibromyalgia did not constitute a severe impairment. However, due to the distinct nature of fibromyalgia, the Court cannot excuse the ALJ's lack of discussion on this issue—particularly at Step Two. *See Kinsey v. Berryhill*, No. CV 8:16-3682-BHH, 2018 WL 1443952, at *4 (D.S.C. Mar. 22, 2018) ("However, the Court agrees with Plaintiff that conducting

11

an appropriate step two analysis is the ALJ's responsibility, and it would be entirely inappropriate for this Court to weigh the evidence and determine in the first instance whether objective evidence demonstrates the diagnostic criteria for finding fibromyalgia."); *Lyman v. Comm'r of Soc. Sec.*, No. 1:16-CV-124, 2017 WL 2240509, at *3 (W.D. Mich. May 23, 2017) ("While it may be the case that this ultimately should not amount to a grant of benefits, the Commissioner's discussion should have been the type of analysis performed by the ALJ in the first place."); *Richardson v. Berryhill*, No. 1:16-CV-00116-HBB, 2017 WL 1227941, at *5 (W.D. Ky. Mar. 31, 2017) ("Here, the undersigned does not know whether the diagnosis of fibromyalgia was unclear or not because the ALJ offered no discussion of the matter. This failure to develop the record warrants remand.").

### B.     Plaintiff's Remaining Allegations of Error

Accordingly, the Court finds that Plaintiff's case must be remanded for the ALJ to appropriately consider and discuss the medical record with respect to Plaintiff's fibromyalgia, such as evaluating whether Plaintiff's fibromyalgia constitutes a severe impairment and to consider the effect of her fibromyalgia on her ability to perform work-related activities in the RFC determination. *See id.* at *5 ("On remand, the ALJ should assess the 2013 diagnosis of fibromyalgia pursuant to SSR 12-2p, meaning that if the single diagnosis is insufficient to make a determination, the ALJ should request additional evidence to better develop the record."). "Evaluation of Plaintiff's claim requires the resolution of certain factual disputes which this Court is neither competent nor authorized to undertake in the first instance." *Mann v. Comm'r of Soc. Sec.*, No. 1:15-CV-243, 2016 WL 1211424, at *6 (W.D. Mich. Mar. 29, 2016). "Moreover, there does not exist compelling evidence that Plaintiff is disabled. Accordingly, this matter must be remanded for further administrative action." *Id.*

On remand, the ALJ should also consider Plaintiff's remaining allegations of error.

12

However, to assist the ALJ and to briefly address Plaintiff's arguments, the Court notes that the ALJ cited to Dr. Misra's findings that Plaintiff's neuropathy was questionable due to Plaintiff's ability to feel the tuning fork. [Tr. 17]. Additionally, with respect to Dr. Young's opinion, an ALJ may appropriately consider a treating physician's specialization under 20 CFR 404.1527, including that a physician is not a mental health specialist. *See Tom v. Comm'r of Soc. Sec.*, No. 2:17-CV-858, 2018 WL 6167342, at *9 (S.D. Ohio Nov. 26, 2018) ("The ALJ likewise did not err in considering that neither Dr. Storrs nor Dr. Nguyen is a mental health specialist. A medical source's specialization is a relevant consideration under the regulations."), *report and recommendation adopted by*, 2019 WL 251860 (S.D. Ohio Jan. 17, 2019).

## VI. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 15**] will be **GRANTED IN PART**, and the Commissioner's Motion for Summary Judgment [**Doc. 17**] will be **DENIED**. This case will be **REMANDED** to the SSA for the ALJ to appropriately consider Plaintiff's fibromyalgia in the disability decision.

ORDER ACCORDINGLY.

_____
United States Magistrate Judge

13